```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
EPHRAM LAHASKY,

                    Petitioner,              MEMORANDUM & ORDER
                                             09-MC-688 (JS)
         -against-

UNITED STATES OF AMERICA, DOUGLAS SHULMAN,
Commissioner of Internal Revenue, and
NEENA I. SINGH, Revenue Agent,

                    Respondents.
----------------------------------------X
APPEARANCES:
For Petitioner:     Ephram M. Lahasky, pro se
                    130 Lord Avenue
                    Lawrence, NY 11559

For Respondents:    Robert W. Schumacher, II, Esq.
                    U.S. Attorney's Office
                    Eastern District Of New York
                    610 Federal Plaza
                    Central Islip, NY 11722
```

SEYBERT, District Judge:

Pending before the Court is Petitioner Ephram Lahasky's petition to quash the third-party summons Respondents issued in search of Petitioner's financial records, and Respondents' cross-petition to enforce the summons. For the following reasons, the petition to quash is DENIED and the cross-petition to enforce is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

On October 9, 2009, Respondents issued a third-party summons (the "Summons") pursuant to 26 U.S.C. § 7602(a)(2) to Capital One N.A. The Summons named Petitioner and ordered

1

Capital One to produce documents related to Petitioner's account activity. Pet ¶ 5. See Pet. Ex. 1. On October 23, 2009, Petitioner commenced this action seeking to quash the summons, under 26 U.S.C. §§ 7609(a) and (b).[1] Petitioner claims that Respondents issued the Summons to harass him, that the documents requested have no relevance to any legitimate purpose, that Respondents already possess all information relevant to his tax liabilities, and that certain procedural requirements were not followed. In response, Respondents oppose Petitioner's petition and, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a),[2] filed a cross-petition to enforce the Summons.

## DISCUSSION

### I. Subject Matter Jurisdiction

26 U.S.C. § 7609(h)(1) limits subject matter jurisdiction to the United States District Court "within which

---

[1] 26 U.S.C. § 7609(a) provides in pertinent part: "If any summons to which this section applies requires . . . the production of any portion of records made or kept on or relating to . . . any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified." The statute further provides that, "[A]ny person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons." Id.

[2] § 7402(b) provides in pertinent part, "If any person is summoned under the internal revenue laws to . . . produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such . . . production of books, papers, or other data." § 7604(a)'s language is nearly identical.

the person to be summoned resides or is found." See also 26 U.S.C. §§ 7402(b) and 7604(a). The phrase "resides or is found" requires that "the summoned party have a physical presence, such as a branch office, within the district" seeking to exercise jurisdiction. Mensh v. U.S., No. 08-CV-4162, 2009 WL 2242295, at *2 (E.D.N.Y. July 27, 2009).

Here, the Summons was mailed to a Capital One location in the Southern District of New York, Pet. Ex. 2. But Petitioner has pled that Capital One has "offices in a number of locations within ... the Eastern District of New York." Pet ¶ 4. And the Court takes judicial notice that Capital One does, in fact, have branch locations within the Eastern District of New York. Thus, this Court may properly exercise subject matter jurisdiction over this action.

II. Standard Of Review

"Because [P]etitioner is a pro se litigant, the [C]ourt holds his pleadings to 'less stringent standards than formal pleadings drafted by lawyers.'" Mensh, 2009 WL 2242295, at *1 (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). "The [C]ourt interprets the pleadings 'to raise the strongest arguments that they suggest.'" Id. (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

3

III. <u>Enforcement Of The Third-Party Summons</u>

Congress has imposed on the IRS the duty to "make . . . inquiries, determinations, and assessments of all taxes." <u>Mollison v. U.S.</u>, 481 F.3d 119, 122 (2d Cir. 2007) (quoting 26 U.S.C. § 6201(a)). In order to increase the IRS's effectiveness in carrying out this mandate, Congress "endowed the IRS with expansive information-gathering authority." <u>U.S. v. Arthur Young & Co.</u>, 465 U.S. 805, 816, 104 S. Ct. 1495, 79 L. Ed. 2d 826 (1984). 26 U.S.C. § 7602 is "the centerpiece of that congressional design."[3] <u>Id.</u>

Counter-balancing the "broad congressional command" of 26 U.S.C. § 7602, <u>id.</u> at 820, the taxpayer about whom information is being sought may petition, pursuant to § 7609(b), to quash a § 7602 summons. <u>Mollison</u>, 481 F.3d at 122. Confronted with such a petition, the government must establish a <u>prima facie</u> case for enforcing the summons at issue. <u>PAA Mgmt., Ltd. v. U.S.</u>, 962 F.2d 212, 215 (2d Cir. 1992). This requires the government to show: "(i) a legitimate purpose exists for the

---

[3] § 7602(a) states, "For the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax . . . the Secretary is authorized (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; [and](2) To summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . .. to produce such books, papers, records, or other data, a nd to give such testimony, under oath, as may be relevant or material to such inquiry."

4

investigation, (ii) the summons may be relevant for that purpose, (iii) the information sought is not already in the possession of the government, and (iv) the procedural and administrative steps required by the Code for serving a summons have been followed." Id. (citing U.S. v. Powell, 379 U.S. 48, 57-58, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964)).

Once the government has made this showing, designed "to ensure only the basic propriety of [its] investigation," the burden "shifts to the taxpayer to disprove one of the four Powell criteria, or to demonstrate that judicial enforcement would be an abuse of the court's process." Mollison, 481 F.3d at 123 (internal quotations omitted). Such an abuse has taken place when "the summons ha[s] been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Powell, 379 U.S. at 58.

A. Respondents Have Established Their Prima Facie Case

The government's burden in establishing a prima facie case for enforcement of a § 7602 summons is "minimal." U.S. v. White, 853 F.2d 107, 111 (2d Cir. 1988). In fact, "the government may even establish its prima facie case by the affidavit of an agent involved in the investigation averring each Powell element." Id.; see also Adamowicz v. U.S., 531 F.3d

151, 156 (2d Cir 2008); Mollison, 481 F.3d at 123 (IRS made a sufficient preliminary showing through agent's declaration affirming compliance with each Powell element). Here, Respondents have submitted, as part of their cross-petition, the declaration of Revenue Agent Neena I. Singh, the agent investigating Petitioner's tax returns.

1. The Summons Was Issued For A Legitimate Purpose

Congress has authorized the IRS to issue summonses requesting taxpayers' financial records "[f]or the purpose of ascertaining the correctness of any return [or] determining the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a). In establishing legitimacy of purpose, the government need state its purpose for issuing a summons with no further specificity. White, 853 F.2d at 112. Thus, an agent's affidavit must "declare only a good-faith pursuit of the congressionally authorized purposes of § 7602" (that is, ascertaining the correctness of any return or determining any internal revenue tax liability for any person). Id. (internal quotations omitted).

Here, Agent Singh has averred that the requested documents are necessary to reconcile certain transactions and deposits appearing on Petitioner's return with his explanations to Singh about the same, as well as "otherwise [to] properly investigate the correctness of Petitioner's tax returns and

6

federal tax liabilities . . . for the year ending 2004." Decl. ¶ 6 (emphasis added). Furthermore, Agent Singh has declared that her pursuit of this congressionally authorized purpose was made in good faith: "The Summons was not issued in an attempt to intimidate or harass Petitioner." Id. at ¶ 7. Thus, Respondents have made a prima facie showing that they issued the Summons for a legitimate purpose.

2. The Material Sought Is Relevant To That Purpose

In ascertaining the correctness of a taxpayer's return, or determining his tax liabilities, the IRS is entitled to "examine any books, papers, records, or other data which may be relevant or material to such inquiry." 26 U.S.C. § 7602(a)(1) (emphasis added). As the Supreme Court has stated, "The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even potential relevance." Arthur Young, 465 U.S. at 814. In establishing that a requested item has potential relevance, "the threshold the [IRS] must surmount is very low, namely, whether the inspection sought might have thrown light upon the correctness of the taxpayer's returns." Adamowicz, 531 F.3d at 158 (internal citations and quotations omitted).

Here, Agent Singh has testified that she discovered "various large deposits . . . and other questionable financial transactions" when examining Petitioner's tax returns. Decl. ¶3.

7

The resulting Summons sought account statements and activity for Petitioner's savings, checking, and credit card accounts, including deposit slips and cancelled checks; copies of deposited checks; copies of loan applications, including net worth statements; records of proceeds and payments on any outstanding loans; visitation records for any safe-deposit boxes rented; and any escrow records. See Pet. Ex. 1. Considering that Agent Singh was seeking to reconcile certain deposits and transactions in particular, it is hard to conceive how examination of the records listed above would not "throw light" upon these deposits or transactions. At the very least, it is hard to conceive that these records would not, generally, throw light on the correctness of Petitioner's tax return or on the determination of his tax liability, both legitimate purposes under § 7602. Thus, Respondents have made a prima facie showing that the records it seeks are relevant to its legitimate investigatory purpose.

### 3. The Material Sought Is Not Duplicative

The third Powell criterion requires the government to show that the material sought is not already within its possession. Powell, 379 U.S. at 57-58. Here, Agent Singh has averred, "The information sought . . . was not already in the IRS's possession. While Petitioner did provide some documentation to the IRS in the past, only selective and

incomplete documents and information were provided; for example, no deposit slips or documentation were provided explaining Petitioner['s] unexplained deposits in 2004." Decl. ¶ 9. In so averring, Agent Singh's declaration satisfies Respondents' burden for this prong. See Mollison, 481 F.3d at 124 (IRS met third prong because, among other things "petitioners have failed to establish that the IRS already possesses the information sought" and subpoena sought documents "beyond what" petitioners had already voluntarily provided).

4. Requisite Administrative Steps Were Followed

Finally, the government must demonstrate that "the procedural and administrative steps required by the Code for serving a summons have been followed." PAA Mgmt., 962 F.2d at 215 (citing Powell, 379 U.S. at 58). When issuing a summons to a third-party record keeper, the IRS "shall identify the taxpayer to whom the summons relates . . . and shall provide such other information as will enable the person summoned to locate the records required under the summons." 26 U.S.C. § 7609(a)(3). If the material sought was described "with reasonable certainty," a district court may enforce the summons. 26 U.S.C. § 7603(a).[4]

---

[4] While various procedural steps are required for the issuance of a summons such as is at issue here, see 26 U.S.C. § 7603(a) (method of service), 26 U.S.C. § 7609(a)(1) (notice to taxpayer within three days of service of summons to third-party record

9

Here, Agent Singh has averred, "The Summons was served, and notice was given to Petitioner, as indicated on the certificate of service contained in the Summons . . . . All administrative steps required by the Internal Revenue Code for issuance of summonses have been taken." Decl. ¶¶ 5, 8. In addition, it appears that the requirements of 26 U.S.C. §§ 7603(a) and 7609(a)(3) have been met. The first line of the Summons explicitly mentions Petitioner by name. Pet. Ex. 2. Furthermore, the Summons provides an extensive and particularized list of each individual item sought, states the time span of the material sought, and even includes a specific account number. See Pet. Ex. 1. Even Petitioner does not argue that the material has not been identified with "reasonable certainty" or that Capital One will be unable to locate it. Thus, Respondents have made a <u>prima</u> <u>facie</u> showing that all procedural steps required by the Code were followed in the issuance of the Summons.

B. <u>Petitioner Fails To Rebut This Prima Facie Case</u>

Once the government has made its <u>prima</u> <u>facie</u> case for the enforcement of a third-party summons, the taxpayer's burden in rebutting it "is a 'heavy' one, which he must meet by

---

keeper), Petitioner appears to have challenged only Respondents' failure to "state the 'liability' (actual or ostensible) for which [the summons was] issued in compliance with 26 U.S.C. 7602(a) [and] 7609(a)(3)." Pet's Br. 3.

'disproving the actual existence of a valid civil tax determination . . . purpose,'" White, 853 F.2d at 111 (internal quotations and alterations omitted), or proving a failure on the part of the government to establish one of the other Powell criteria, see Mollison, 481 F.3d at 123.

    1. Petitioner Has Not Demonstrated An Illegitimate Purpose

For a taxpayer to be entitled to an evidentiary hearing as to whether a third-party summons was issued in bad faith, "mere conclusory allegations of wrongdoing unsupported by any evidence from which a court might draw an inference of abuse are insufficient to rebut the government's prima facie showing of a proper investigatory purpose"; rather, "the taxpayer has met his burden if he alleges specific facts from which the court might infer a possibility of some wrongful conduct by the [g]overnment." U.S. v. Millman, 765 F.2d 27, 29 (2d Cir. 1985) (internal quotations omitted). Furthermore, the government need not demonstrate "probable cause" for issuance of a summons; rather, it may issue summonses "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Powell, 379 U.S. at 57 (comparing the investigatory power of the IRS to that of the Grand Jury).

Here, Petitioner alleges that Respondents issued the Summons in bad faith, solely with the improper purpose to

"harass" and "intimidate" him. Pet's Br. at 4; Aff'n in Opp'n to Cross-Pet. ¶ 8(a). Additionally, Petitioner asserts that, because the Summons did not cite any legal authority on its face for its issuance, and because it did not specify any particular offense for which Petitioner was being investigated, the Summons could not have been issued for any legitimate purpose. Id.

Petitioner does not attempt to support these conclusory allegations of harassment further and, thus, has not met his evidentiary burden. Quite the opposite: Petitioner acknowledges that Agent Singh's reasons for harassing him are "unknown." Aff'n in Opp'n to Cross-Pet. ¶ 8(a). But Petitioner's unsupported belief that Agent Singh is acting improperly does not warrant an inference of wrongful conduct on Respondents' part. See Millman 765 F.2d at 31 (finding that a taxpayer had met his burden when, among other things, government counsel conceded that an IRS agent had been hostile toward the taxpayer and an affidavit showed that another agent also had a bias against the taxpayer).

Furthermore, that the IRS failed to cite the authority for the Summons' issuance or the particular offense for which Petitioner was being investigated does not prove an illegitimate purpose. Pet's Br. 4. A summons need not state the legal authority or investigative purpose for its issuance; rather, it need only "identify the taxpayer to whom the summons relates

12

[and] provide such other information as will enable the person summoned to locate the records required under the summons." 26 U.S.C. § 7609(a)(3). And the IRS is not required to establish probable cause for issuing a summons to a third-party record keeper; rather, it may issue a summons merely "[f]or the purpose of ascertaining the correctness of any return [or] determining the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a). See Powell, 379 U.S. at 57.

    2.   <u>Petitioner Has Not Alleged A Failure To Comply With The Other Powell Criteria</u>

Petitioner makes several unconvincing assertions with regard to the remaining Powell criteria.

As to the second prong, Petitioner argues that the IRS has not shown a "realistic explanation" that the information sought would be "relevant" to a legitimate purpose of the Summons. Rather, he argues, the Summons is merely a "fishing expedition" conducted in the "idle hope" that the IRS will find something. Pet. Br. 4. However, as discussed above, the IRS is entitled to any material which might "throw light" on Petitioner's tax liabilities, or the correctness of Petitioner's tax returns. See Adamowicz, 531 F.3d at 158. The requested information would clearly meet this minimal relevance requirement. See Pet. Ex. 1; Decl. ¶ 5.

As to the third prong, Petitioner argues that the IRS already possesses all information relevant to determining Petitioner's tax liability, that the summoned information will add nothing to the IRS's determining of any potential tax liability, that Petitioner has already supplied bank statements and cancelled checks, and that no deposit slips were ever previously requested by Respondents. See Pet. ¶ 9; Aff'n in Opp'n to Cross-Pet. ¶ 6. Again, as has been discussed, even if Petitioner has supplied Respondents with all information relevant to determining his tax liabilities, Respondents are not required to take Petitioner at his word that the material is accurate; rather, Respondents are entitled to verify the accuracy of the proffered information by seeking records from third parties. See Mollison, 481 F.3d at 124. Furthermore, nothing in the relevant Code provisions requires the IRS to first request material from a taxpayer before seeking it through a third-party summons.

Finally, as to the fourth prong, Petitioner argues that, to meet the procedural requirements of the Internal Revenue Code, any summons must state the "liability" for which it is issued. Pet's Br. 3. However, Petitioner's assertion is inaccurate. Respondents need only meet the requirements of 26 U.S.C. §§ 7603(a) and 7609(a)(3) relevant to the discussion here: naming the taxpayer at issue and describing the material

with sufficient particularity for the entity summoned to locate the records sought. Respondents have done so: The Summons explicitly mentions Petitioner by name, Pet. Ex. 2, and provides an extensive list of the items sought, states the relevant time frame, and includes an account number. <u>See</u> Pet. Ex. 1. And even Petitioner does not argue that Capital One will be unable to locate the material.

IV. <u>Costs</u>

Respondents have asked the Court to grant their costs in maintaining this action. Cross-Pet. ¶ 11(b). However, Respondents have cited no case law or statutory authority justifying such an award. Neither have Respondents alleged that Petitioner acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Thus, the Court declines to give Respondents such relief.

CONCLUSION

Petitioner's petition is DENIED.  Respondents' cross-petition is GRANTED IN PART DENIED IN PART.  To that end, Respondents' cross-petition is GRANTED insofar as it seeks to enforce the summons.  Respondents' cross-petition is DENIED insofar as it seeks "costs in maintaining this action."

SO ORDERED

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           June  28 , 2010